**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00752-1-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Andrew James Vilcauskas, Jr., | |
| Defendant. | |

This long-delayed case has been pending since June 25, 2019. Doc. 1. Defendant Andrew James Vilcauskas has delayed the case through non-cooperation with his counsel (*see, e.g.,* Docs. 120-124; Transcript of October 14, 2021 Hearing (Livenote Transcript at 15-16)), the assertion of frivolous filings and legal arguments (Doc. 102), numerous motions to continue various scheduled events (Docs. 57, 87, 103, 145, 185, 201, 211, 224, 244), and filing pro se documents despite his representation by counsel (Docs. 27, 30, 35, 36, 44, 105, 118, 120-24, 240, 249). With sentencing less than a month away, and almost a year after his guilty plea, Defendant now moves to withdraw his guilty plea. Doc. 238. The Court will deny his motion.

**I.   Legal Standard.**

After a court accepts a guilty plea and before it imposes a sentence, a defendant may withdraw the plea if he shows a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "[T]he decision to allow withdrawal of a plea is solely within the discretion of the district court." *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir.

2003). The "fair and just reason" standard is applied liberally, but the defendant bears the burden of showing that the standard is satisfied. *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* (citations omitted).

## II.   Defendant's Argument and the Court's Response.

Defendant pled guilty on the morning of his bench trial, September 6, 2022. Doc. 180.[1] Because there was no plea agreement ready for review and signature, the Court postponed the start of trial while the parties drafted the plea agreement, Defendant reviewed it with his counsel, and the Court and Defendant completed a plea colloquy. This process took more than 2.5 hours, from 9:02 a.m. to 11:38 a.m. *See* Doc. 243 at 1, 38.

Defendant was present in the courtroom throughout this time, participated in the proceedings, held repeated private discussions with his counsel, read and signed the plea agreement, and engaged in a detailed plea colloquy with the Court. *See* Doc. 243. The Court found that Defendant understood the proceedings and was fully competent to enter a guilty plea. *Id.* at 36-37. This finding was based on the Court's observation of Defendant's demeanor and his participation throughout the morning's proceedings, as well as his coherent answers to the Court's questions. Further, Defendant's attorney, after more than two hours of interacting with Defendant that morning (*id.* at 7), including detailed private discussions (*id.* at 10-12), observed nothing to suggest Defendant was not competent to understand the proceedings or enter the plea agreement (*id.* at 9-10).

Defendant filed four separate motions to continue his sentencing in the months following his guilty plea. *See* Docs. 185, 201, 211, 224. None of the motions mentioned any difficulty understanding the plea agreement or the plea hearing on September 6, 2022. It was not until August 16, 2023, more than 11 months after the plea hearing and less than one month before his oft-continued sentencing, that Defendant asserted for the first time

---

[1] Defendant knowingly waived his right to a jury trial. Docs. 177, 178.

that he was not competent at the plea hearing. Doc. 238. Defendant claims that he was suffering from kidney stones at the time of the hearing and was in constant pain. He asserts that he was taking the prescription medication Lorazepam and, on the day of the hearing, thought he took six low-dose aspirin when in fact he accidently took six Lorazepam pills. Doc. 238 at 1-2. Defendant does not explain why he was taking Lorazepam, an anti-anxiety medication (*see* Doc. 238-2), for kidney-stone pain.

Defendant claims that he typically takes one 0.5 mg Lorazepam pill and has rarely taken two. Doc. 250-1 ¶¶ 46-48. If true, then the six pills he allegedly took on the day of the hearing were six times higher than his normal dose. And yet he does not explain why the effects of such a severe overdose would have been undetectable to himself, his counsel, the prosecutor, and the Court over the course of 2.5 hours. A Mayo Clinic document attached to Defendant's motion states that common side effects of Lorazepam are drowsiness and sleepiness (Doc. 238-2 at 6), but Defendant displayed neither during the hours he was considering, reading, signing, and accepting the plea agreement. The Court observed no such conditions during its extended time in the courtroom with Defendant, and both his counsel and the prosecutor found nothing to suggest he was not competent to proceed. Doc. 243 at 7.

Most importantly, the Court engaged in a detailed colloquy with Defendant about his competency, his understanding of the plea agreement, and the voluntariness of his plea. His answers, made under oath, "carry a strong presumption of verity" and "constitute a formidable barrier" to subsequent challenges. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Those answers include the following exchange regarding his competency:

> THE COURT: How many years of school have you had? How far did you go in your education?
>
> THE DEFENDANT: Yeah, two years of college.
>
> THE COURT: Okay. You obviously read and understand English?
>
> THE DEFENDANT: Yes.

      THE COURT: And I've concluded in previous hearings that you're competent to understand what we're doing in this case.[2] Have you had any drugs, alcohol or medicine in the last 48 hours?

      THE DEFENDANT: Just my heart medication.

      THE COURT: Does that have any affect upon your ability to understand what we're doing here today?

      THE DEFENDANT: No.

      THE COURT: Have you been treated recently for any mental illness or for addiction to drugs?

      THE DEFENDANT: No, Your Honor.

      THE COURT: Okay. Counsel from the Government, have you learned anything that would suggest that Mr. Vilcauskas is not competent to understand this proceeding or enter into a plea agreement?

      MR. SEXTON: No, Your Honor.

      MR. HALL: No, Your Honor.

      THE COURT: Did you say that as well, Mr. Hall?

      MR. HALL: Yes.

Doc. 243 at 9-10.

Defendant provided these additional responses at the end of the plea colloquy:

      THE COURT: All right. Mr. Vilcauskas, have you understood the things we've talked about today?

      THE DEFENDANT: Yes, your Honor.

      THE COURT: Do you have any questions for your attorney before I actually ask you to change your plea?

      MR. HALL: Questions?

      THE DEFENDANT: No, Your Honor.

---

[2] The Court held a colloquy with Defendant on August 23, 2022, when he waived his right to a jury trial, and found Defendant to be competent. Doc. 178.

1  THE COURT: All right. How then do you plead to the charge in Count 1
2  of the Indictment, charging you with a violation of Title 18 United States
3  Code § 371, which in this case is specifically conspiracy to commit mail
4  fraud and wire fraud, guilty or not guilty?
5  THE DEFENDANT: Guilty, Your Honor.
6  THE COURT: And are you pleading guilty to this crime because you are
7  guilty of it?
8  THE DEFENDANT: Yes, your Honor

*Id.* at 36.

Defendant contends that he did little more during the plea colloquy than give simple answers. The Court does not agree. Defendant declined to answer questions he did not understand. *Id.* at 19. He asked to speak with his attorney several times during the exchange with the Court. *Id.* at 27, 33, 34. He stated that he read and understood the entire plea agreement, and reviewed it with his lawyer. *Id.* at 10-11. When asked whether there was anything in the plea agreement he did not understand, he said: "No, your honor. I understand it fully." *Id.* at 12.

In addition to his clear answers to the Court's questions, Defendant was alert, oriented, and engaged during the hearing. Because of the lengthy delays in getting this case to trial and Defendant's repeated assertions that the Court had no jurisdiction, that he was actually innocent, and that his lawyers were ineffective, the Court was not about to cancel the long-delayed trial without a very clear indication that Defendant was competently, knowingly, and voluntarily pleading guilty. As a result, the Court paid extra attention to Defendant's demeanor throughout the proceeding and to the tone and delivery of his answers. The Court was satisfied that Defendant was fully competent and that the plea was knowing and voluntary. *Id.* at 36, 37.

Defendant asserts in a late-filed affidavit that he has been seriously troubled since the September 2022 plea hearing as to why he agreed to plead guilty. "[I]t didn't make any sense to me how I would have agreed to plead guilty to charges that I've always been

very adamant that I'm totally innocent of." Doc. 250-1 ¶ 28. "I was always planning to go to trial." *Id.* ¶ 29. These concerns allegedly were apparent immediately after his 2022 plea hearing, and yet Defendant did not raise them with the Court for 11 months. Defendant did file a pro se motion to withdraw from his guilty plea in November 2022, stating: "I rescind any alleged plea deal and hereby challenge, via the attached notice and demand, the alleged jurisdictions" of the prosecutors and the Court. Doc. 187 at 2-3. This motion said nothing about his mental condition at the plea hearing.

The Ninth Circuit has noted that "'if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.'" *Nostratis*, 321 F.3d at 1211 (quoting Fed. R. Crim. P. 32 Advisory Committee Notes (1983 Amendment)). Courts look "to a defendant's delay in moving to withdraw a plea as a barometer of the defendant's candor with the court about his reasons for withdrawal." *United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005).

Defendant's belated assertions about his condition at the plea hearing are not credible. The Court does not accept them. They instead comport with his steady efforts to delay and derail the resolution of this case. Defendant has not shown a "fair and just reason for requesting the withdrawal" of his guilty plea. Fed. R. Crim. P. 11(d)(2)(B).[3]

**IT IS ORDERED** that Defendant's motion to withdraw his guilty plea (Doc. 238) is **denied**. The government's motion to strike (Doc. 251) is **denied as moot**.

Dated this 6th day of September, 2023.

David G. Campbell
Senior United States District Judge

---

[3] Nor does the Court find credible Defendant's claim that upon receiving a different medication (Xanax) before kidney surgery in June 2023, he suddenly "had an epiphany" about his impaired mental state at the September 2022 plea hearing. *See* Doc. 250 at 2.