**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

United States of America.

Plaintiff,

v.

Andrew James Vilcauskas, Jr.,

Defendant.

No. CR-19-00752-PHX-DGC

**ORDER**

During a hearing on November 16, 2023, the Court permitted the current defense attorney, Theron Hall, to withdraw, and ordered Defendant James Vilcauskas to represent himself throughout the remainder of this case.  This order will explain the reasons for the Court's action.

**I.      Case History.**

Three lawyers have tried and failed to represent Mr. Vilcauskas in this case.

**A.      Mr. Petti.**

Mr. Vilcauskas originally retained Fredrick Petti as his counsel (Doc. 13), but Mr. Petti asked to withdraw only a few weeks later at the initial appearance.[1]  Mr. Petti explained that he and Mr. Vilcauskas had a fundamental disagreement about the defense of this case.  Mr. Vilcauskas – who participated in the initial appearance by video conference from Oregon, where he lives – stated that he was willing to have Mr. Petti

---

[1] The Court has listened to the recording of the initial appearance held before Judge Fine on August 7, 2019, and the recordings of other magistrate judge hearings described in this order.

continue to act as his lawyer if Mr. Petti would file the documents Mr. Vilcauskas required, but not otherwise.   Judge Fine summarized Mr. Vilcauskas's position as requiring that Mr. Petti do "exactly" what Mr. Vilcauskas wants.  She allowed Mr. Petti to withdraw.  Doc. 21.  Following the hearing, Mr. Vilcauskas personally filed some 100 pages of documents contesting the jurisdiction of the Court.  Docs. 27-30.

> **B.     Mr. Eriksson.**

At a second initial appearance on August 14, 2019, which Mr. Vilcauskas also attended by video conference, Judge Fine appointed Magnus Eriksson to act as advisory counsel.  Doc. 26.  She did so because Mr. Vilcauskas had not retained a new lawyer and yet refused to participate in the hearing, claiming that Judge Fine had no jurisdiction and demanding an Article III judge.  Given his refusal to participate, Judge Fine ordered that Mr. Vilcauskas be arrested and brought to Arizona.

On October 31, 2019, the recently-arrested Mr. Vilcauskas appeared in person before Judge Boyle for an initial appearance and arraignment.  Doc. 40.  Judge Boyle appointed Magnus Eriksson as counsel for Mr. Vilcauskas, observing that it made no sense to have Mr. Eriksson continue as advisory counsel when Mr. Vilcauskas needed a lawyer and had not retained his own counsel.  Before the hearing, Mr. Vilcauskas filed another 60 pages of pro se documents addressing such irrelevancies as "counterfeit security" and "adverse possession."  Docs. 35-36.  Mr. Vilcauskas was released from custody pending trial.  Doc. 45.

Mr. Eriksson represented Mr. Vilcauskas for the next two years.  During this time Mr. Vilcauskas sent Mr. Eriksson some 35 emails asking whether Mr. Eriksson had filed the jurisdictional challenges Mr. Vilcauskas had crafted (the Court had denied his various pro se filings because he was represented by counsel).  Eventually, the Court allowed the jurisdictional motion to be filed, even though Mr. Eriksson believed it was not well taken.  Doc. 86.  The Court denied the motion as frivolous.  Doc. 102.[2]

---

[2] No reply was filed in support of the motion.  Doc. 102 at 1.  Mr. Vilcauskas has asserted that he failed to file a reply because Mr. Eriksson failed to advise him that the

Mr. Eriksson had difficulty communicating with Mr. Vilcauskas.  He advised the Court that he asked Mr. Vilcauskas to travel to Arizona to meet with him, but Mr. Vilcauskas declined.  The Court agreed to pay for Mr. Eriksson to fly to Oregon to meet with his client and arrangements were made, but Mr. Vilcauskas cancelled the meeting.

After months of delay and numerous motions to continue the trial, the Court held several hearings that addressed the attorney-client relationship.  *See* Docs. 109, 119, 126.  Mr. Eriksson eventually filed a motion to withdraw.  Doc. 125.  The Court concluded that the relationship was irretrievably broken and allowed Mr. Eriksson to withdraw.  Doc. 126.

The Court found that the difficulties between Mr. Vilcauskas and Mr. Eriksson were largely the responsibility of Mr. Vilcauskas, as had been true in the previous representation by Mr. Petti.  This finding arose from Mr. Vilcauskas's single-minded focus on the alleged lack of jurisdiction and other legal defects in this case, his refusal to meet with defense counsel, and his general insistence that the case be managed his way.  At a hearing on October 14, 2021, the Court told Mr. Vilcauskas that his next counsel would be carefully selected from the CJA panel as an attorney who could represent him effectively, and if Mr. Vilcauskas was unable to work with that attorney the Court would conclude that he was refusing to work with any attorney and was electing to represent himself.  The Court gave Mr. Vilcauskas a *Faretta* warning, advising him that it would be very unwise to represent himself.  Doc. 126.

### C.    Mr. Hall.

Theron Hall was selected from the CJA panel attorneys as a lawyer who could represent Mr. Vilcauskas effectively.  After more than eight months of representation and less than two months before trial, attorney-client difficulties arose again.  Mr. Vilcauskas filed a 283-page document laying out Mr. Hall's alleged deficiencies.  Doc. 150.  The document confirmed the Court's previous conclusion that problems in the relationship

---

motion had been filed.  The arguments in the jurisdictional motion, however, were plainly frivolous and no amount of arguing in reply would have changed that fact.

were largely due to Mr. Vilcauskas's demands.  For example, Mr. Vilcauskas sent Mr. Hall 72 detailed written questions – interrogatories, essentially – about the case (Doc. 150 at 2); sent 26 detailed "action items" to be completed by Mr. Hall (*id.*); directed Mr. Hall to find and interview a "potentially hostile" witness who was deported to Mexico, with few concrete leads on where the witness may be located (*id.* at 3-4); instructed Mr. Hall to interview 27 additional witnesses (*id.* at 4-5); directed Mr. Hall to investigate an allegation of fraud on the court by Mr. Eriksson (*id.* at 6; Doc. 150-1 at 7-9); and instructed him to investigate misconduct by the prosecutor (Doc. 150 at 6).

Mr. Vilcauskas sent Mr. Hall more than 1,000 questions to be asked of the witnesses he identified.  *Id.* at 5.  At a hearing on July 7, 2022, Mr. Vilcauskas said that the actual number of questions was closer to 1,300.  *See, e.g.,* Doc. 150-1 at 80-128; Doc. 150-2 at 1-114.  Mr. Vilcauskas directed Mr. Hall to send him a list of questions Mr. Hall intended to ask witnesses at least a week before each interview "so I can contemplate your questions and revise my questions as well."  Doc. 1502 at 107.  Mr. Vilcauskas directed: "Please do NOT just use these questions below without giving me ample time to edit/change/reorder them before an interview[.]"  *Id.*  In short, Mr. Vilcauskas sought to dictate every step of Mr. Hall's defense in the minutest detail, prescribing the subjects to be addressed, the wording of interview questions, and even the order in which questions were to be asked.

Despite these difficulties, the Court directed Mr. Hall to continue.  Doc. 152.  The Court advised Mr. Vilcauskas that although he had the right to be represented by counsel, he did not have the right to control his attorney's every action.  *Id.*  The case continued toward the firm trial date of September 6, 2022.

On the morning of trial, Mr. Vilcauskas elected to plead guilty.  Trial was delayed for a few hours, a plea agreement was drafted, Mr. Vilcauskas and Mr. Hall conferred in detail about the plea agreement, and the Court held a detailed plea colloquy.  Docs. 180, 243.  The Court accepted the guilty plea and set a sentencing hearing for December 14, 2022.  Doc. 180.

Defendant subsequently filed two motions to withdraw his guilty plea, both of which were denied by the Court. Docs. 192, 255. The Court's order of September 6, 2023 explains in detail why the Court rejected – as not credible – Mr. Vilcauskas's claim that he was drugged and not competent to plead guilty at the September 6, 2022 hearing. Doc. 255.

More than a year has passed since the guilty plea and the sentencing has not yet occurred. Through Mr. Hall, Mr. Vilcauskas has filed five successive motions to continue, all based on allegedly pressing medical problems. *See* Docs. 185, 201, 211, 224, 244. The Court reluctantly granted these motions in light of doctor letters claiming that Mr. Vilcauskas was in pain from kidney stones or surgery, was taking plain medication, and was unable to travel or participate in court proceedings. Sentencing is now set for December 6, 2023.

During this year of delay, Mr. Vilcauskas has not simply been sick and recuperating. He has continued filing pro se arguments. On November 23, 2022, he filed a document asserting again that the Court lacked jurisdiction and arguing that the plea agreement was an unconscionable contract. Doc. 187. On January 23, 2023, he filed a document, copied to the Judiciary Committee of the U.S. House of Representatives and the U.S. Attorneys for Oregon and Arizona, claiming that the Court lacked jurisdiction, that impeachable offenses and treason had been committed by various people connected to his case, that the United States is a private foreign corporation, and other frivolous claims. Doc. 194. On August 14 and 17, 2023, Mr. Vilcauskas filed a document claiming that he had located newly discovered evidence that exonerated him and noting that his lawyer, Mr. Hall, refused to file a motion on this basis. Docs. 237, 240. On August 25, 2023, Mr. Vilcauskas filed another document addressing newly discovered evidence and asserting that Mr. Hall was not representing him effectively. Doc. 249.

Most recently, on November 3, 2023, Mr. Vilcauskas filed 379 pages of material, including a 120-page typewritten memorandum (much of it single-spaced) that cited more than 80 cases and dozens of other authorities. Doc. 266. He styled this a petition

for a writ of habeas corpus and argued that his prosecution was barred by the Administrative Procedures Act because the U.S Postal Service failed to follow required administrative steps in connection with this case.  Three days later, Mr. Hall filed a motion to withdraw as counsel because Mr. Vilcauskas had filed a complaint against Mr. Hall with the Arizona State bar.  Docs. 267-269, 271.  Upon receiving Mr. Hall's motion, the Court set a hearing for November 16, 2023.  Doc. 270.  The Court stated that Mr. Vilcauskas could participate by telephone from Oregon.

Less than three hours before the hearing, Mr. Hall, at the request of Mr. Vilcauskas, filed a motion to continue the hearing, asserting again that Mr. Vilcauskas was unable to participate for health reasons.  Doc. 272, 273.  The motion claimed that Mr. Vilcauskas had undergone surgery for kidney stones on October 27, 2023, that he continued to have "some flank pain" for which he was taking medication, and that he should not participate in legal proceedings for some time.  *Id.*

The Court convened the hearing as scheduled on November 16, with Mr. Vilcauskas on the phone.  Doc. 274.  The Court denied the motion to continue because Mr. Vilcauskas had amply demonstrated his ability to deal with legal matters by preparing and filing his recent 379-page document – after his alleged recent surgery – and because "some flank pain" was not a sufficient reason to postpone the hearing, particularly in light of the impending December 6, 2023 sentencing date.  Mr. Vilcauskas stated on the record that he preferred to participate in the hearing by phone, rather than travelling to Phoenix to attend in person.

The Court held a sealed discussion with Mr. Vilcauskas and Mr. Hall regarding Mr. Hall's motion to withdraw.  Mr. Vilcauskas confirmed that he had filed a bar complaint against Mr. Hall.  When asked whether he wanted to continue being represented by Mr. Hall, Mr. Vilcauskas would say only that he wanted competent counsel.  Mr. Hall asserted that the attorney client relationship was irretrievably broken even though the bar complaint had been recently dismissed.  Mr. Vilcauskas implied that he intended to appeal the dismissal.

The Court reached several conclusions:  First, the attorney-client relationship between Mr. Vilcauskas and Mr. Hall is irretrievably broken.  Second, problems in the relationship are due to Mr. Vilcauskas, as in the previous relationships with Mr. Petti and Mr. Eriksson.  Third, the Court will stand by its conclusion of October 14, 2021 that Mr. Vilcauskas will not be granted a fourth lawyer.  Appointing another attorney would only further delay this four-year-old case, waste additional resources, and ultimately result in the same failure of the attorney-client relationship.  Fourth, Mr. Vilcauskas will represent himself through the remainder of this case.  Fifth, sentencing will proceed as scheduled on December 6, 2023.

The Court notes that it previously found Mr. Vilcauskas competent (Doc. 178), and now finds that he is sufficiently competent to represent himself.  He clearly understands the nature of the case against him and the nature of these proceedings, he has crafted and filed hundreds of pages of legal arguments, and he is articulate and coherent during hearings.  The Court clearly warned Mr. Vilcauskas on October 14, 2021 that his failure to work with Mr. Hall would be taken as a choice to represent himself.  He was told that representing himself would be unwise, including a discussion of the complex issues and challenges he would face at sentencing.  And yet he chose to file a bar complaint against Mr. Hall, knowing full well that he was the last lawyer the Court would appoint.  During the hearing on November 16, 2023, Mr. Vilcauskas remembered details of the October 14, 2021 hearing that showed he clearly understood the warning and the consequences of his action.

## II.    Legal Ground for the Court's Action.

Many cases have held that a court may infer a knowing and intelligent waiver of the right to counsel if a defendant, after warnings from the court, discharges or fails to cooperate with counsel.  *United States v. Turner*, 897 F.3d 1084, 1104-05 (9th Cir. 2018) (valid waiver where defendant vacillated between asserting right to self-representation and right to counsel four times despite warning that rejecting final appointed counsel would constitute waiver); *United States v. Sutcliffe*, 505 F.3d 944, 954-55 (9th Cir. 2007)

(defendant's verbal abuse and legal action against four court-appointed attorneys resulted in waiver of right to counsel); *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir. 1987), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) (valid waiver where defendant thrice refused to accept appointed counsel, hire his own attorney, or to expressly waive his right to counsel); *United States v. Thomas*, 357 F.3d 357, 363 (3d Cir. 2004) (defendant's refusal to cooperate with and verbal abuse of four court-appointed attorneys resulted in waiver of right to counsel); *United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002) (valid waiver when defendant discharged third appointed counsel after explicit warning that fourth counsel would not be appointed for sentencing hearing); *United States v. Kneeland*, 148 F.3d 6, 11 (1st Cir. 1998) (valid waiver when defendant discharged third appointed counsel after explicit warning that fourth counsel would not be appointed); *United States v. McLeod,* 53 F.3d  322, 325-26 (11th Cir. 1995) (defendant's abusive conduct toward attorney constituted forfeiture of right to counsel); *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir. 1988) (valid waiver when defendant discharged counsel after repeated warnings by court that fourth counsel would not be appointed); *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985) (valid waiver when defendant discharged counsel after court cautioned that no replacement counsel would be appointed); *United States v. Windley*, No. CR-10-660-2-PHX-DGC, 2012 WL 12538943, at \*1 (D. Ariz. Oct. 22, 2012) (defendant required to represent himself after failing to cooperate with three appointed attorneys).

This decision comports with guidance from the Ninth Circuit:

> While having already been granted a motion to substitute counsel once does not preclude Mendez-Sanchez receiving another lawyer, the fact that this was the same breakdown in communications that had occurred with his previous lawyer is significant.  The nature of the conflict demonstrates that it may have been based on Mendez-Sanchez's general unreasonableness.  It is unclear what could have been done differently: Mendez-Sanchez had three lawyers tell him what he did not want to hear, he had not listened to any of them, and the judge herself had told him the same thing.  If Mendez-Sanchez had received other counsel, it is likely that the same conflicts would have arisen. . . . There must be limits on the ability of a defendant to

gain new counsel when the defendant is acting unreasonably and especially where appointing new counsel would require a continuance with a consequent disruption to the court process.

*Mendez-Sanchez*, 563 F.3d 935, 944 (9th Cir. 2009).

This case has been pending since June 25, 2019.  Defendant pled guilty more than 14 months ago.  Further delays would be unwarranted, unjust, and unreasonable.  As clearly warned, Mr. Vilcauskas will be required to represent himself at his sentencing on December 6, 2023.  He chose that result by refusing to cooperate with three different defense lawyers.

Dated this 20th day of November, 2023.

_____
David G. Campbell
United States District Judge